## Kelly, Appellant, v. Brenner, Receiver of Taxes, et al.

Argued November 27, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edwin J. McDermott,* with him *Isidor Ostroff,* for appellant.

*T. B. K. Ringe,* with him *Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellee,

OPINION BY MR. JUSTICE SIMPSON, December 7, 1934:

In the court below, plaintiff filed a taxpayer's class bill, seeking to enjoin the receiver of taxes of the City of Philadelphia from "preparing a list of all the taxable inhabitants of the City of Philadelphia for the use of the board of jury commissioners in the selection of persons for jury service" in the several courts located in the city; from appointing one person in each election district of the city to ascertain and report the taxable inhabitants eligible for jury service in said district, and from having printed any copy of the list for the use of the board of jury commissioners in the selection of persons for jury service; to enjoin the city controller "from approving or countersigning any warrants" for payments in connection with the performance of such services and such printing; and to enjoin the city treasurer from making any payments in connection therewith. The receiver of taxes filed preliminary objections to the bill, which, after argument in the court below, were sustained by it and the bill dismissed. From this order, plaintiff prosecutes the present appeal. We are clear that the order of the court below should be affirmed.

The Act of April 20, 1858, P. L. 354, entitled "An act establishing a mode of selecting and drawing jurors in and for the City of Philadelphia," was, at that time, the only statutory method for the purpose specified. Section 1 provides for the personnel of "a board for superintending and managing the drawing and selecting of jurors, to serve in the several courts of the said city." Section 2 specifies that "Prior to the first day of December in each and every year, the receiver of public taxes of the said city shall lodge with the said sheriff, for the use of the said board, a duly certified list of all the taxable inhabitants of the said city, setting out their names, places of residence and occupation; and prior to the tenth day of December in each and every year, it shall be the duty of the said board, or a quorum thereof, to assemble together and select from the said

list of taxables a sufficient number of sober, healthy and discreet citizens, to constitute the several panels of jurors, grand and petit, that may be required for service in the said several courts for the next ensuing year, in due proportion from the several wards of the said city, and the principal avocations." The later sections of the statute relate to the placing of the names thus selected in the jury wheel; the drawing of the names of jurors therefrom, when needed; the summoning of the jurors drawn and the custody of the jury wheel; but neither therein, nor in any later statute, unless it be the supplementary Act of April 13, 1859, P. L. 595, now about to be considered, is it specified how the receiver of taxes is to obtain the list of taxables he is required, by the Act of 1858, to deliver to the sheriff for the use of the board of jury commissioners.

Section 1 of the Act of 1859, supra, provides "That it be the duty of the several [ward] assessors of the City of Philadelphia to ascertain, by strict inquiry, the proper orthography of the name of each taxable person within his ward, the exact number of his place of residence, together with his present occupation, profession or business, and to state, plainly written, all such particulars in his assessment list." Section 2 specifies "That the list of taxables, directed in the second section of the Act [of April 20, 1858, supra] to which this is a supplement, to be lodged with the sheriff by the receiver of taxes of the City of Philadelphia, be so lodged before the tenth day of November next, and before the same day and month in every year thereafter."

The first section of this supplementary act provided for a list which could be used by the receiver of taxes as the list he was to deliver to the sheriff under the Act of 1858, and was, at that time, doubtless thus utilized, though not expressly required so to be. By the Act of April 6, 1870, P. L. 53, the assessors of the several election divisions in the city, were substituted for the ward assessors in the matter of furnishing the data referred

to in the first section of the Act of 1859, and the lists thus compiled were thereafter used by the receiver of taxes in complying with section 1 of the Act of 1858, supra.

Thus matters continued until, by the Act of January 30, 1874, P. L. 31, and subsequent statutes, the several registry assessors of each election district of each ward of the city were required to "visit in person each and every dwelling house in his district . . . and to make a list, in a book prepared for that purpose by the county commissioners, of all the qualified electors he shall find, upon careful and diligent inquiry, to be bona fide residents of his district." After that date the lists thus prepared,—those for each election district of each ward being bound together as a separate volume,—were used by the receiver of taxes as the lists required by him to be delivered to the sheriff, as provided by the Act of April 20, 1858, supra, and they continued to be so used until, by the amendment of November 7, 1933, of article VII, section 1 of the Constitution, and the Act of January 17, 1934, Special Session 1933-4, P. L. 236, all the then existing provisions relating to the office of registry assessor and the preparation of assessors' lists were repealed.

Since that date there has been no "list of taxables" from which "a sufficient number of . . . citizens, to constitute the several panels of jurors, grand and petit, that may be required in the said several courts [of Philadelphia County] for the ensuing year," could be taken. The receiver of taxes thereupon inquired of the board of judges of the county as to what he should do, and was advised that he should appoint in each election district one qualified elector to canvass each and every house in his district and make up a list of those who were thus found to be qualified for jury service, and that the lists thus prepared,—which together would make up a general list for the city,—would be the list to be delivered by him to the sheriff. The board of judges

found authority for the advice thus given in the provision of the Act of April 20, 1858, above quoted, and therewith we fully agree. The only alternative was to close the courts, so far as concerned cases which required a jury for their decision, and this was an unthinkable conclusion so long as any other possible solution of the difficulty could be found. Litigants in such cases are constitutionally entitled to a jury trial (article I, section 6, Constitution of Penna.) and are also entitled to have the courts open and justice administered "without sale, denial or *delay*" (Ibid., article I, section 11). These are fundamental rights which should not be infringed upon, unless no other course is reasonably possible (Fluke v. Lang, 283 Pa. 54), which is not the case here.

Appellant seems to think, however, that, because there is no statutory provision specifying how the receiver of taxes is to obtain the list which he is required to deliver to the sheriff, there is an hiatus in the law which cannot be closed save by further legislation. The law is precisely the reverse of that contention. The receiver of taxes being required by the legislature to furnish such a list, he must perform the public duty thus imposed upon him, although no express statutory way is provided; and this is exactly what he did. Indeed, there is no complaint, in this proceeding, of the course pursued nor of the sum expended by him, if, despite the failure of the legislature to state exactly how he should perform the duty cast upon him, he may none the less proceed to obtain the list. This we have shown he had a duty to do, and since also the city council has, by ordinance, made the necessary appropriation to pay the expense incurred in thus obtaining it, the whole basis of appellant's complaint necessarily falls.

The order of the court below is affirmed and the appeal is dismissed at appellant's cost.