361 A.2d 688
**John RICHARDS and Elizabeth Richards,
his wife, Appellants,**

**v.**

**John E. SWIFT and Margaret G. Swift, his wife.**

Superior Court of Pennsylvania.
June 28, 1976.

360

Gerald C. Grimaud, Tunkhannock, for appellants.

James E. Davis, John B. Farr, Tunkhannock, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from a judgment of non pros entered against plaintiffs, John and Elizabeth Richards, in favor of defendants, John E. and Margaret G. Swift. The facts are as follows. On March 22, 1952 defendants entered into an agreement situated at Lake Winola to defendants for consideration of $6,000. On March 26, 1952 defendants entered into an agreement to convey back to plaintiffs the same property within two years for consideration of $6,000. For reasons unimportant to the instant appeal, defendants would not convey the property back to plaintiffs and, on September 24, 1954, plaintiffs filed a complaint in equity asking for specific performance. On December 16, 1954 defendants filed an answer and trial commenced on June 1, 1955 before the Honorable Edward B. Farr. Testimony of the trial was transcribed and filed on August 1, 1955. Within five months Judge Farr retired without disposing of the matter. For nineteen years the matter laid dormant, until October 10, 1974, when defendants filed a petition for non pros and a rule was issued against plaintiffs to show why the case should not be non prossed. Plaintiffs filed their answer on December 17, 1974 and on December 18, 1974 a hearing was held. An order entered June 7, 1975 granted defendants' request for a judgment of non pros. It is from this order which plaintiffs now appeal to this court.

The law as to when a non pros may be granted is clear. Three conditions must be present (1) the plaintiff must have failed to prosecute his action within a

reasonable time; (2) there must be no reasonable excuse for the delay; and (3) the delay must have been prejudicial to the defendant. *James Bros. Co. v. Union B. & T. of DuBois*, 432 Pa. 129, 247 A.2d 587 (1968); *Gaito v. Matson*, 228 Pa.Super. 288, 323 A.2d 753 (1974); *Rizzo v. Pittsburgh Railways Co.*, 226 Pa.Super. 566, 323 A.2d 174 (1974). It is also clear that a decision granting a judgment of non pros is soundly within the discretion of the lower court and such decision will not be reversed absent manifest abuse of discretion. *Gallagher v. Jewish Hosp. Assn. of Phila.*, 425 Pa. 122, 228 A.2d 732 (1967).

■■ Because of the length of the delay in the instant case the first condition does not warrant extensive discussion. Admittedly the plaintiffs promptly filed their complaint and saw that the matter went to trial. However, after trial their prosecutorial promptness substantially diminished. They allowed the case to lie dormant for nineteen years. This delay is unreasonable. While we agree the court must accept some degree of fault, this did not relieve plaintiffs from the duty to press on with their case. As was stated in *Waring Bros. & Co. v. Pa. R.R. Co.*, 176 Pa. 172, 178, 35 A. 106, 108 (1896): "[I]t is the plaintiff's duty to proceed with his cause within a reasonable time. He is the actor, and must act, or fail." The fact that the lower court did not decide the matter after trial did not relieve the plaintiffs of this responsibility to proceed with the case. This is particularly significant when the delay could have been easily avoided and remedied by simply bringing the fact that a decision had not been rendered to the attention of the lower court. Accordingly, we hold that plaintiffs did not prosecute their action within a reasonable time.

The second condition needed for granting a non pros, i. e., that there exists no reasonable excuse for the delay, is also easily disposed of in that the only excuse offered by plaintiffs is that their attorney was responsible for

the delay. We are aware of the line of cases in which mistake, oversight or neglect of counsel has been held to excuse a delay. See *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Fox v. Mellon*, 438 Pa. 364, 264 A.2d 623 (1970); *Stephens v. Bartholomew*, 422 Pa. 311, 220 A.2d 617 (1966); *Manson v. First National Bank*, 366 Pa. 211, 77 A.2d 399 (1951); *Johnson v. Yellow Cab Co. of Phil.*, 226 Pa.Super. 270, 307 A.2d 423 (1973); *Poluka v. Cole*, 222 Pa.Super. 500, 295 A.2d 132 (1972); *Cinnaminson Park Co. v. Laws*, 63 Pa.Super. 189 (1916). However, in the instant case we do not have a situation where an attorney missed a filing date by a few hours and in turn jeopardized a valuable cause of action for his unknowing client. Here we have a delay of almost two decades during which time plaintiff took no action whatsoever. Such a situation leads to the inescapable conclusion that plaintiffs themselves abandoned their cause of action.

■ As to the third condition, that the delay was prejudicial to the defendants, plaintiffs raise several arguments. First, plaintiffs contend that testimony of prejudice to the defendants should not have been introduced into evidence because no averments of prejudice appeared in defendants' petition for non pros and, therefore, plaintiffs were not prepared to argue this issue at the hearing. While we do not wish to encourage the use of inarticulately drawn petitions, we nevertheless cannot accept plaintiffs' contention that he was justified in being unprepared to argue the issue of prejudice due to the complained of omission from the petition. We reach this conclusion for several reasons. First, the law as to when a non pros may be granted is clear. Three conditions must be present, one of which is as mentioned above, prejudice to the defendant. *James Bros. Co. v. Union B. & T. Co. of DuBois*, supra; *Gaito v. Matson*, supra; *Rizzo v. Pittsburgh Railways Co.*, supra. A mere

cursory review of the law relating to non pros would have revealed that defendant was required to show prejudice. Accordingly plaintiff cannot claim surprise when evidence as to the required element of prejudice was introduced. Secondly, the mere fact that a nineteen-year delay is alleged, in itself, impliedly and obviously raises the question of prejudice. Thirdly, defendants state in their brief to this court:

"Local Rules for the 44th Judicial District require that the parties to a dispute of this nature file briefs in advance of hearing. Appellant's counsel filed a detailed brief prior to hearing in which sub-heading 'C' was entitled 'Defendant Must Be Prejudiced by the Delay Before He May Succeed on His Petition for Nonpros.' This section of the [hearing] brief cited many of the same cases relied on by both appellants and appellees [on this appeal] to the effect that damage or prejudice must be shown for laches to apply. Appellees had also filed a brief prior to hearing covering the issues of damage and prejudice as a result of the delay in prosecution."

In light of the above we cannot accept plaintiffs' argument that they were unprepared to argue the issue of prejudice due to the complained of omission from the petition.

Lastly, plaintiffs contend that the defendants have not actually suffered prejudice by the delay in this case. They argue that the testimony on the specific performance issue is complete, and that the delay will not prejudice the defendant's case due to missing witnesses, lapses of memory or lost documents. While plaintiff is correct as to the lack of prejudice relating to the trial of the case, they fail to consider the broader types of prejudice which result from a delay of this nature. During this nineteen year delay the value of the property in question has risen from $6,000.00 to over $15,000.00. Furthermore, defendants have performed extensive and costly

renovations and repairs to the premises in the belief that plaintiffs had abandoned their claim. The courts cannot allow a claim which has laid dormant for almost two decades to be reasserted after increases in property value and extensive improvements have made the property more desirable. To do so would allow plaintiffs to profit from their own delay.

Accordingly, since plaintiffs have failed to prosecute their action within a reasonable time, and have failed to offer a reasonable excuse for the delay, while defendants have been prejudiced by the delay, it cannot be said that the lower court abused its discretion by granting the judgment of non pros.

Affirmed.

PRICE, J., files a dissenting opinion in which WATKINS, President Judge, joins.

PRICE, Judge (dissenting).

This appeal from the entry of a judgment of non pros entered in favor of appellees presents a most unusual problem. That the majority has resolved it in favor of appellees does no violence to precedent for, if my research is correct, there is none. I would, however, resolve this appeal in favor of removing the judgment of non pros and remanding to the lower court with directions to resolve this litigation by finally reaching a determination on the merits.

The facts relevant to an understanding of this case are not, at this stage, disputed. In March of 1952 the appellants sold a certain lot with a summer cottage erected thereon which is located at Lake Winola in Wyoming County, Pennsylvania. The appellees were the buyers and they paid a consideration of $6,000.00 for this property. Also, in March of 1952 these same parties signed a memorandum of agreement covering the same property which, it is alleged, bound appellees to sell the same prop-

erty to appellants after the expiration of two (2) years for the same purchase price of $6,000.00.

The terms of this agreement and the facts of the alleged failure of appellees to re-sell the property to appellants are not now before us, however, on September 24, 1954 appellants filed their complaint in Equity for specific performance. Appellees filed their answer on December 16, 1954. Trial commenced on June 1, 1955 before the then President Judge of Wyoming County, the late Honorable Edward B. Farr. The testimony was filed on August 1, 1955. Judge Farr retired five (5) months later without disposing of the matter, and from August 1, 1955, when the testimony was filed, to September 30, 1974, when the Honorable Robert W. Tremboth was assigned to the matter specially, there are no docket entries.

On October 10, 1974 appellees filed a petition for non pros and that same day a rule was issued against appellants to show cause why their *complaint* should not be non prossed.

For reasons not upon the record Judge Tremboth [1] disqualified himself and on November 8, 1974 the Honorable Fred W. Davis was assigned.

On December 17, 1974 appellants filed their answer to the petition for non pros.

On December 18, 1974 the hearing on this petition and answer came on before Judge Davis and after the taking of testimony, an order was entered on June 9, 1975 entering the judgment of non pros in favor of appellees. It is from this order that the appeal now before us was taken.

The lower court concluded that (a) appellees had shown by sufficient evidence that they would be damaged

---

1.  The record printed on this appeal in a note to the Docket Entries explains that the judge had originally represented appellees. Whether this is an official entry or a note added by appellants is not clear.

by the allowance of the appellants' cause of action, in that appellees had expended considerable sums of money to make improvements to the cottage and lot and that the value of the said real estate had increased significantly during the delay,[2] and (b) appellants were guilty of laches, in failing to press more effectively for a decision on the merits of their case and that therefore the appellees were entitled to a judgment of non pros against appellants.

The lower court in its opinion confirms our earlier observation concerning the unusual nature of this case with the observation that the briefs of the parties and its own research has failed to disclose any precedent in a case under the circumstances:

"where the trial court itself was *prima facie* responsible for the delay in the proceeding. It is certainly no excuse, and only a partial explanation, to note that both of Judge Farr's successors on the bench were involved in the case as counsel for the parties, one on each side of the litigation. In the absence of specific authority, we must reason from more general principles of law to arrive at a conclusion."

It is certainly beyond dispute that it is the clear law of this Commonwealth that the granting of a judgment of non pros because of the failure of the plaintiff to prosecute his action within a reasonable time rests within the discretion of the lower court and that the exercise of such discretion will not be disturbed on appeal unless there is proof of a manifest abuse thereof. *Gallagher v. Jewish Hospital Association of Philadelphia*, 425 Pa. 112, 228 A.2d 732 (1967).

It is also clear that such a judgment may properly be entered when a party to the proceedings has shown a want of due diligence in failing to proceed with reasonable promptitude and there has been no compelling rea-

2. The opinion finds from $6,000.00 in 1952 to "at least" $15,000.00 in 1974.

son for the delay, and the delay has caused some prejudice to the adverse party, such as the death or unexplained absence of material witnesses. *Rizzo v. Pittsburgh Railways Company*, 226 Pa.Super. 566, 323 A.2d 174 (1974).

These, of course, are the correct principles of law that have traditionally been applied to non pros cases and are the ones applied by the lower court. They have been employed in all cases I have been able to find when a party in the position of appellants has failed to bring his cause of action to trial. In my opinion, however, it is error to apply such principles to the circumstances here presented. The uniqueness of this case is such that I would hold that they do not apply and reverse as an error of law the lower court's entry of the judgment, thus allowing the lower court to reach a proper judgment on the complete record which is, and has been for over twenty (20) years, available for decision. To impose this drastic measure of non pros under the circumstances here before us is offensive to what I perceive to be the very purpose of such a judgment, that is, to prevent a party from delaying *trial* of a cause of action until the adverse party suffers such prejudice that its chances to prevail have been greatly reduced. Such a danger is not present here and thus there is no reason to apply those principles. As previously noted I do not, and cannot, cite any precedent for or against such application.

In *Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970), the court was presented, in a non-jury trial, with a delay of more than seven (7) years between the conclusion of the trial and the entry of the verdict. Mr. Justice Pomeroy, speaking for the majority of the Supreme Court, had this comment on judicial delay:

"Appellant contends that the lower court's failure to order a new trial *sua sponte* because of the inordi-

nate delay between trial and decision was an abuse of discretion.

Appellant is correct that the court below had the power to grant a new trial *sua sponte*, if in its opinion justice so required. *Getz v. Balliet*, 431 Pa. 441, 446, 246 A.2d 108 (1968); *Fisher v. Brick*, 358 Pa. 260, 262, 56 A.2d 213 (1948). The question, then, is whether the court abused its discretion by failing to do so.

Nothing in the record indicates that any party was responsible for this delay; the fault appears to have been that of the trial judge. Such dereliction flouts the proud promise of the Magna Carta: 'to none will we . . . deny, to none delay, either right or justice.' It contravenes the guarantee of the Constitution of this Commonwealth that ' . . . Every man . . . shall have . . . right and justice administered without sale, denial or delay.' Article I, Section 11. It flies in the teeth of the statutory standard that the decision of a court sitting without a jury ' . . . shall be filed . . . as early as practicable, not exceeding sixty days from the termination of the trial . . .' (footnote omitted) The right to have justice administered without delay is a fundamental right which should not be infringed unless no other course is reasonably possible. *Kelly v. Brenner*, 317 Pa. 55, 59, 175 A. 845 (1934).

We said in *General Foods Corp.* [429 Pa. 266, 271, 239 A.2d 359 (1968)], that as a matter of judicial administration we would not condone an eighteen month delay but that we could understand it. A seven year delay we neither condone *nor* understand; we can only deplore it. While there may have been extenuating circumstances of which we have no knowledge, we must express our sense of dismay and chagrin that a delay so protracted could occur in the courts of this Commonwealth in the 1960's.

Our unhappiness with this delay is not, however, a sufficient ground for ordering a new trial, for such an order would still further defer the end to this litigation. If the facts of this case support the decision as rendered, we would compound the injustice by requiring the parties to return to their pre-1960 positions and begin anew the trial of this case. Accordingly, we hold that the lower court's failure to grant a new trial solely because of the long-delayed decision was not an abuse of discretion." 436 Pa. at 484–86, 261 A.2d at 322–23.

No place in this discussion is there a hint of penalty to either party in not moving for an earlier decision.

In *Shrum v. Pennsylvania Electric Company*, 440 Pa. 383, 269 A.2d 502 (1970), the Supreme Court was called upon to comment upon the entry of a nonsuit at trial and plaintiff's delay of seven (7) years in filing a praecipe for argument on their motion to remove the nonsuit:

"We must agree with the lower court and appellees in this matter: we think appellant was guilty of laches. It was her duty as the moving party, not that of the judge, to obtain a transcription of the trial record; and it was her duty as the moving party, not that of the appellees, to have the case put down for argument. *Hruska, et al. v. Gibson*, 316 Pa. 518, 175 A. 514 (1934). We have recently had occasion to criticize an unexplained delay of seven years on the part of a judge in deciding a motion for a new trial, *Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 484, 261 A.2d 319 (1969); surely there is no less reason to deplore a like delay by a litigant or counsel in bringing a post-trial motion on for argument. Such a lapse of time is presumptively prejudicial to all parties even without any specific showing of prejudice on the record, especially where as here, the new trial being sought would take place twelve years following the occurrence involved. It is, moreover, incompatible with the orderly

and prompt dispatch of judicial business. Normally only four days are permitted by the rules of court for the filing of post-trial motions; if a new trial is granted, it must be placed at the head of the next general trial list. Act of May 31, 1907, P.L. 357, § 1, 12 P.S. § 693. A lengthy delay in bringing such a motion on for disposition does not comport with this pattern, designed for reasonable expedition in terminating litigation.

In these circumstances, and in the discretion of the lower court, a judgment of non pros might well have been entered. *See James Bros. Lumber Company, et al. v. Union Banking and Trust Company of DuBois*, 432 Pa. 129, 247 A.2d 587 (1968); *Hruska, et al. v. Gibson, supra; Potter Title & Trust Co., Admr. v. Frank, et al.*, 298 Pa. 137, 148 A. 50 (1929). In the later case this Court observed (page 142, 148 A. page 52) : 'As a matter of common fairness, he who brings another into court should prosecute the claim against him with reasonable diligence, and one who sues in a representative capacity no less so than an individual. There is no greater reflection upon the administration of justice than the permission of endless litigation.' *See, also, Stoever v. Walmer*, 140 Pa. 590, 21 A. 444 (1891) ; *Ward v. Patterson*, 46 Pa. 372 (1863); *Rozelle v. Lewis*, 9 Lack.Jur. 22 (1907). No such motions were filed, however, and the lower court did not decide the case on the ground of delay alone. We have therefore considered the appeal on its merits." 440 Pa. at 386–87, 269 A.2d at 504.

Here again is reaffirmed those principles which have been previously recognized, but only in the context of a delay caused by a party.

Further, while an appellate court is rightfully careful to declare an abuse of discretion on the part of the lower court, were I to apply the above cited principles to these

circumstances I would hold that this entry of judgment of non pros was such an abuse.

The appellant here has, to my view, prosecuted his action well within any definition of reasonable time. The failure lies not in the preparation and trial of his action, but in the lower court's failure to reach a decision based upon a matter tried to the conclusion of the evidence the parties presented. When the transcript was filed on August 1, 1955, the next step was that of the court's and not of the parties.

In assessing the terms "due diligence", "reasonable promptitude" and "no compelling reason for the delay" it seems to me we lay an inequitable and drastic indictment against appellants that is completely unwarranted under these circumstances. Indeed, in balancing these equities here present I am unable to support a denial of appellants' right to a decision on the merits of their claim. To do so does constitute an abuse of discretion in the lower court. I am cognizant of the situation in which Judge Davis found himself, nevertheless, even though specially assigned, the delay of the judicial district must be considered as a whole in reaching this conclusion.

The delay in this case is, as Judge Davis recognized, certainly the responsibility of the trial court itself. The fact that both of the trial judges' successors were involved in this case offers proper and reasonable grounds to excuse either party for pressing a former attorney involved for a decision, for such a course of action would be unfair to that judge or to one of the parties. And to ask for a specially assigned judge for such a reason poses some embarassment, and considerable expense, and certainly to impose the burden of such a procedure on appellants to the exclusion of all others in a matter already tried seems contrary to the concept of justice. Indeed I believe it offers a compelling excuse for the delay and

does not rise to a failure of "reasonable promptitude" and "due diligence."

As to prejudice to appellees, I am equally unimpressed. Appellees were on notice that not only was this action for specific performance pending but were completely aware of all the evidence that would be used against them. Such a pending action would place a purchaser of the property on guard and surely is notice to appellees that, pending disposition of the action, any improvements made were subject to the risk of loss of the property. It is, therefore, proper to find, as I would, that any improvements were made subject to that risk and that appellees assumed that risk in so proceeding. I regard the increase in the value of this property in the same light. And not insignificant to this determination is appellees' rent free use of this property since 1952. Therefore, 1 can find no prejudice to appellees.

For all of these reasons I would reverse the entry of judgment of non pros and remand this case to the lower court with directions to proceed, on the transcript of August 1, 1955, to a decree on the merits.

WATKINS, President Judge, joins in this opinion.